NATIONAL CITY BANK OF NEW YORK, Plaintiff and Appellee, v. FUENTEFRÍA & ARROYO, Defendant and Appellant.

No. 6965. Argued November 18, 1936.—Decided November 3, 1937.

Emilio S. Belaval for appellant. Fiddler, Córdova & McConnell and J. M. Morales for appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the Court.

The National City Bank of New York brought this action on two bills of exchange payable to the order of the American Colonial Bank and endorsed by it to plaintiff. The two bills had been accepted by Fuentefría & Arroyo as drawee. The

only question before us is whether these obligations had been extinguished by novation.

■■ Section 1158 of the Civil Code (1930 ed.) provides that:

"In order that an obligation may be extinguished by another which substitutes it, it is necessary that it should be so expressly declared, or that the old and new be incompatible in all points."

One of the bills was drawn by R. A. Muñoz, the other by M. Berríos & Co. and R. A. Muñoz. Later Muñoz and his wife, Elvira Fuentefría, executed a mortgage to secure the payment of $85,307.25 which Muñoz acknowledged to be the total amount of his indebtedness to the American Colonial Bank arising out of direct loans and discounted notes and bills as liquidated and accepted by mutual agreement between him and the bank. This amount Muñoz promised to pay within one year from the date of the mortgage.

The mortgage was executed June 29, 1929. One of the bills fell due July 23, 1929. A payment of interest was made August 12, 1929, and the bill was extended to August 23. The other bill became due August 6, 1929, a payment of interest was made August 13, 1929, and the bill was extended to August 23, 1929.

The mortgage contained no express declaration as to the extinguishment of preexisting obligations. The mortgage and the two bills of exchange now before us are not "incompatible in all points." The drawee was, of course, primarily responsible for the full amount of both bills of exchange. The obligation of Muñoz as the drawer of the first bill of exchange and of Muñoz and Berríos & Co. as drawers of the second, was a secondary liability. It may be conceded that Muñoz, by his unconditional promise to pay within a year the full amount of both bills, waived (as between himself and the bank, at least) any benefit accruing to him from this secondary liability and assumed, instead, of this secondary liability, a joint and several liability. He

also agreed to pay interest on his entire indebtedness. The drawee was not a party to the mortgage and was not bound by the mortgagor's agreement to pay interest at 9 per cent from the date of the mortgage. The drawer's acknowledgment of his indebtedness to the bank for the full amount of both drafts and his promise to pay the same with interest thereon at 9 per cent within a year did not release the drawee from its obligation to pay the same amount when due in accordance with the terms of the two accepted bills, with interest thereon at the legal rate of 6 per cent per annum, from the respective dates upon which those bills were to become due. It did not affect the drawee's obligation to the bank in any way. The mortgage did not provide for the relinquishment, surrender or cancellation by the bank of any preexisting evidence of indebtedness. It did not necessarily contemplate or involve any waiver by the bank of its right to enforce collection from joint and several debtors other than Muñoz by suit against such debtors upon promissory notes or bills of exchange notwithstanding the joint and several liability of Muñoz for the payment of such notes or bills of exchange. The bank, at least, did not so construe it. Some one, after both bills had become due and more than a month after the execution of the mortgage, made a payment of interest and the bank extended both bills to August 23, 1929. Muñoz testified as a witness for defendant that he was "quite sure" that the bank had charged the amount of the bills to his account and that they were "included in the liquidation". Aside from the fact that these bills were included in the so-called liquidation, he gave no reason for his belief that they were charged to his account. A mere surmise that they were so charged is not enough. If it had any probative value it was offset by the established fact that the bank retained possession of the bills, accepted the payment of interest thereon, granted an extension of time within which to pay the principal and subsequently endorsed and delivered both bills to another bank, plaintiff herein. Obviously, the bank re-

garded the mortgage as in substance and effect additional security for the payment of preexisting indebtedness, not as a novation of all preexisting obligations, including those of debtors other than Muñoz. The instrument was clearly open to that interpretation because as we have said it was not "incompatible in all points" with the preexisting obligations of other debtors such as those assumed by Fuentefría & Arroyo.

A perusal of the opinion in *Guerra v. American Colonial Bank,* 21 Fed. (2) 56, relied upon by appellant, will suffice to distinguish that case from the case at bar.

A case somewhat more in point may be found in 123 Jurisprudencia Civil, 543. There the Supreme Court of Spain held that a certain mortgage amounted to the novation of a previous contract because the time for payment of the previous obligation had been extended and the obligation of the mortgagors, drawers of a bill of exchange, had been substituted independently of the mortgage itself for the obligation of the drawee named in the bill. In the instant case, as we have shown, the obligation assumed by the drawee had not been extended by the terms of the mortgage. The obligation assumed by the mortgagors had not been substituted for the preexisting obligation previously assumed by the drawee. There had been no substitution of one debtor for another. There was nothing to prevent the bank from suing the drawee upon his obligation as soon as it became due on the date specified in the bill. Whether the Supreme Court of Spain was right or wrong in the circumstances of the case decided by it, the *ratio decidendi* of that case does not dispose of the case now before us.

The judgment appealed from must be affirmed.

Mr. Chief Justice Del Toro and Mr. Justice Córdova Dávila took no part in the decision of this case.